IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 20-94 |
| JUSTIN SEAN JOHNSON | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S POST-CONVICTION MOTION

Defendant Johnson pleaded guilty to just 2 counts of a 39-count Indictment after hacking into the computer systems of multiple businesses, and stealing the sensitive information of approximately 200,000 people, in order to profit from selling that information on the dark web. All of the numerous allegations contained within his § 2255 motion must be denied because: his plea letter waived most collateral attacks; restitution errors are not cognizable in a § 2255 motion; his guilty plea vitiated any statute of limitations claim; he has procedurally defaulted all of his claims; and he has failed to meet the heavy burden of proof required in the § 2255 context.

### I.  BACKGROUND

In his computer, Johnson left notes to himself prophetically indicating that "I can't keep doing what I've been doing or I will end up in jail." PSR ¶ 30. Later, he told a friend that he would be "rich by the end of the year." PSR ¶ 24. Shortly thereafter, UPMC's computer system was hacked and tens of thousands of pieces of sensitive personally identifiable information (PII) were stolen - involving virtually every one of that health care company's 92,000 employees. PSR ¶ 16; *see also* https://www.upmc.com/about/facts/numbers (last visited November 19, 2022). Johnson was the individual who had hacked into UPMC's computer system, and he subsequently sold the employees' information to buyers on multiple dark web sites. PSR ¶ 18. In turn, that information was used by the buyers to file 1,326 fraudulent income tax returns in an attempt to

obtain nearly $3,000,000 in fraudulent refunds. PSR ¶ 31. Some of the false returns resulted in payment via Amazon.com gift cards, and at least $340,000 in merchandise purchased with those cards was sent by a re-shipper to Venezuela. PSR ¶ 17.

But his sudden wealth from selling the UPMC employees' PII was not sufficient to sate Johnson and he subsequently stole and offered to sell "tens of thousands" of additional sets of PII on the dark web, then another "45,000 fresh names" and PII. PSR ¶¶ 18-19. When federal investigators identified Johnson after a nearly half-decade investigation, and searched his storage locker, they located multiple electronic devices which revealed that he had stolen an additional 89,310 sets of (non-UPMC) PII from employees, patients, or students of 3 universities and 2 healthcare facilities. PSR ¶¶28. Electronic artifacts from those devices showed that he had also hacked into 2 other universities. PSR ¶ 28.

Attorney Nicola Henry-Taylor was appointed as Johnson's CJA lawyer. Doc. No. 11. She reviewed the extensive discovery provided by the government, Doc. No. 20, and negotiated a written agreement containing numerous significant concessions, PSR ¶¶ 10-11. Primary among those benefits was the dismissal of 41 of the 43 counts contained within the Indictment, as that limited Johnson's maximum potential incarceration to just 7 years. PSR ¶ at 1. The 37 dismissed allegations of wire fraud in Counts 2-38 each carried a maximum of 20 years of incarceration, while each of the 4 dismissed counts of aggravated identity theft carried a mandatory (and consecutive) 2-year sentence of incarceration. Doc. No. 7 at 4. The agreement also limited the applicable offense characteristics and adjustments, PSR ¶ 11, such that Johnson understood that the sentencing guideline range for Count 1 would be 23 x I = 46 to 57 months, PSR ¶ 91. In addition to the sentencing guideline range at Count 1, the 2-year mandatory consecutive penalty

at Count 39 effectively made the overall sentencing guideline range 70-81 months.  PSR ¶¶ 89-90 (noting the mandatory consecutive penalty applicable to Count 39).

On May 20, 2021, Johnson pleaded guilty in accordance with his written agreement.  Doc. No. 31.  Defense counsel filed multiple documents seeking a sentence below the guideline range, Doc. Nos. 40, 47, and 48, while the government filed multiple documents seeking a sentence above the guideline range, Doc. Nos. 41, 46, and 51.  In advance of the sentencing hearing, the Court advised the parties that either outcome was possible.  Doc. No. 50.  After hearing the parties' sentencing presentations and Johnson's allocution, the Court determined that a total sentence of 84 months of incarceration (just 3 months above the effective sentencing guideline range noted above, and the maximum possible sentence -- due solely to counsel's plea negotiations which limited Johnson's sentencing exposure) and 3 years of supervised release was appropriate.  Doc. No. 55.  Judgment was entered on October 15, 2021. Doc. No. 55. The Court left the issue of restitution open for a period of 90 days.  Doc. No. 55.  On October 29, 2021, the Judgment was amended in order to correct the special assessment amount.  Doc. No. 58.  A stipulation to a restitution amount of $987,090 (far below the $3,000,000 amount of intended loss, and less than $5 per victim) was filed on November 23, 2021. Doc. No. 59.  Not until almost one month after the stipulation was filed on the docket did defense counsel move to withdraw her appearance, on December 21, 2021.  Doc. No. 60.  The Judgment was later amended for a second time, on January 31, 2022, to include the agreed-upon amount of restitution.  Doc. No. 62.  Johnson did not file a direct appeal and filed the current § 2255 motion on October 25, 2022.  Doc. No. 63.

## II.   TIMELINESS

The Court specifically requested that the government address the timeliness of the motion.  Doc. No. 64.  Title 28, United States Code, section 2255(f) provides a defendant with a one-year

period to file a § 2255 motion. With narrow exceptions, that one-year period begins to run when the judgment of conviction becomes "final." 28 U.S.C. § 2255(f)(1).

If a defendant does not seek a direct appeal, the conviction becomes "final" when the 14-day period to file for an appeal expires. *United States v. Kapral*, 166 F.3d 565, 577 (3d Cir. 1999); Fed. R. App. P. 4(b)(1)(A)(i) (setting forth the 14-day appeal period). While there appears to be an unresolved debate regarding whether the 14-day appeal period starts from the date of the original Judgment, or instead from a later Amended Judgment, that issue is not determinative here. Adding the 14-day appeal period, and the one-year limit under § 2255(f), to the original Judgment date of October 15, 2021, Doc. No. 55, results in a file-by date of October 29, 2022. Since the motion was filed on October 25, 2022, Doc. No. 63, the government submits that the current motion is indeed timely and that the Court should proceed to address it.

### III. JOHNSON WAIVED THE MAJORITY OF HIS COLLATERAL ATTACK RIGHTS IN HIS WRITTEN PLEA AGREEMENT

The biggest incentive for the government to negotiate an agreement with a defendant is to help ensure the finality of the matter. *Oliver v. United States*, 951 F.3d 841, 847 (7th Cir. 2020) (a plea bargain's benefit of finality would be eroded if a defendant could later renege on his agreement). A prosecution is anything but final if the government is required to expend resources in order to address claims that were waived. In this case, Johnson's plea agreement contained waivers regarding both his direct appeal rights, and his collateral attack rights.

Specifically relevant to the current motion, Johnson's collateral attack waiver stated: "Defendant further waives the right to file a motion to vacate sentence under 28 U.S.C. § 2255, attacking his conviction or sentence and the right to file any other collateral proceeding attacking his conviction or sentence." Exhibit 1 at ¶ (A)(10). This collateral attack waiver, however, was subject to an important limitation. The plea letter states further that "Nothing in the foregoing

4

waivers of rights shall preclude the defendant from raising a claim of ineffectiveness of counsel in an appropriate forum, if otherwise permitted by law." *Id*.

Thus, apart from ineffective assistance of counsel claims, Johnson has waived the right to present his collateral attack allegations. As a result, some of Johnson's allegations, including those in Ground 3(B) (that the Butler County Jail failed to return his releases of information), and all of the allegations in Ground 4 (5th Amendment Due Process claims alleging: false information in the government's sentencing memorandum; an improper contention by the government that Johnson is a domestic terrorist; the government's alleged misrepresentation regarding Johnson's "epitaph"; the Court's "unsupported" and "inconsistent" claim that Johnson could have obtained employment; and the Court's unsupported conclusion that Johnson was "cold and calculating") must be denied unless Johnson proves that his waiver was not voluntary or knowing, or results in a miscarriage of justice. Johnson has not made such an allegation[1], and, in any event, he cannot meet that burden.

A determination of whether Johnson knowingly and voluntarily entered into a plea agreement containing an appellate/collateral attack waiver turns on whether the district court informed the defendant of, and determined that the defendant understood the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence as Federal Rule of Criminal Procedure 11(b)(1)(N) requires. *United States v. Jackson,* 801 Fed. App'x 51, 54-55 (3d Cir. 2020); *see also* Fed. R. Crim. P. 11(b)(1)(N) (setting forth that before accepting a plea of guilty, the district court must "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to

---

[1] Johnson's failure to address his waiver in his motion is likely not fatal as "it is incumbent upon the government to invoke the waiver's applicability in the first instance." *United States v. Goodson*, 544 F.3d 529, 534 (3d Cir. 2008) (regarding the similar issue of whether a defendant's failure to address a waiver in his direct appeal is fatal).

5

collaterally attack the sentence."). It is Johnson's burden to "present[] an argument that would render his waiver unknowing or involuntary." *Mabry*, 536 F.3d at 237. As explained below, Johnson has not and cannot meet his burden.

As noted above, Courts are required to conduct an inquiry to ensure that a defendant is aware of, and understands, his collateral attack waiver. Although the guilty plea transcript has not yet been received, the deeply rooted "presumption of regularity" which applies to court proceedings means that a Court is presumed to have performed as required unless the defendant proves to the contrary. *Parke v. Raley*, 506 U.S. 20, 29-30 (1992). Any claim that the waiver is invalid would presumably be contradicted by Johnson's "[s]olemn declarations in open court[,]" which "carry a strong presumption of verity." *Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994) (quoting *Blackledge v. Allison,* 431 U.S. 63, 74 (1977)). The validity of the waiver is also supported by the written plea agreement itself, which Johnson had opportunity to review with counsel before signing. Plea agreement at 6 (acknowledging that Johnson understands the terms of the agreement). In addition, during the plea colloquy, this Court is believed to have asked Johnson questions about his understanding of the plea agreement, including the waiver provision in particular. Because the collateral attack waiver was presumably knowing and voluntary, it should be enforced.

The Court must also inquire as to whether enforcement of the waiver would result in a miscarriage of justice. With regard to whether enforcement of the waiver "would work a miscarriage of justice in this case," *Mabry*, 536 F.3d at 239, the court is to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." *Id.* at 242-43. A "miscarriage of justice" is "something grave and out of the ordinary." *Id.* at 239.

Although there is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice, courts are directed to consider the following factors: "[T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *Mabry,* 536 F.3d at 243-44 (citing *United States v. Teeter,* 257 F.3d 14, 25-26 (1st Cir. 2001)). For example, enforcing a waiver in connection with a coerced plea would result in a miscarriage of justice. *See Mabry*, 536 F.3d at 243 (citing *United States v. Wilson,* 429 F.3d 455 (3d Cir. 2005)).

At their core, the claims that are the subject of the collateral attack waiver allege that Johnson should not have received a sentence that was above the guidelines - by just 3 months. Thus, their gravity is minimal. *See United States v. Swerdon*, 207 F. Supp. 3d 525, 533 (M.D. Pa. 2016) (finding that a waiver should not be enforced, in part, due to a sentencing difference of 58 months). But most importantly, Johnson has not proven any error or impact, let alone clear error or significant impact.

In short, in this case, "[e]nforcing the waiver is in line with justice, not a miscarriage of it." *Mabry,* 536 F.3d at 244. Accordingly, to assure the government what remains of the fruit of its bargain — the promise that the government would not be required to devote its resources to defend such a collateral attack — the Court should enforce the waiver, refrain from exercising subject-matter jurisdiction, and dismiss the waived claims — Ground 3(B) (that the Butler County Jail failed to return the releases of information) and all of the allegations in Ground 4 (Due Process allegations) — with prejudice.

7

### IV.  JOHNSON'S RESTITUTION CHALLENGE IS NOT COGNIZABLE ON COLLATERAL REVIEW

Not every type of challenge may be considered on collateral review. *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020) (Section 2255 relief "does not reach 'every asserted error of law.'") (citing *Davis v. United States*, 417 U.S. 333, 343 (1974)). Johnson attempts to challenge the restitution determination in Grounds 7 and 8. Doc. No. 63 at 13. But this is not a custodial aspect of his sentence and is therefore outside the scope of relief under § 2255. *See United States v. Trimble*, 12 F. Supp. 3d 742, 745 (E.D. Pa. 2014) ("[C]ourts of appeals to consider the issue have held that a claim for relief from a restitution order cannot be brought in a habeas corpus petition, whether or not the petition also contains cognizable claims for release from custody.") (citing cases); *United States v. Hampton*, Cr. No. 15-302, 2021 WL 1088289, at *9 (E.D. Pa. Mar. 22, 2021) (finding the same). Because Johnson's restitution challenges are not cognizable on collateral review, those claims must be denied.

### V.  JOHNSON'S GUILTY PLEA WAIVED HIS STATUTE OF LIMITATIONS CLAIM

Johnson alleges that "if" the statute of limitations had run, he "may not" have pleaded guilty to the conspiracy charge at Count 1. Doc. No. 63 at 12. But, the Supreme Court has repeatedly held that, as a general rule, a guilty plea forecloses a defendant's right to collaterally attack his conviction. *United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). One very narrow exception to this rule is that a defendant may still bring a double jeopardy claim. *Menna v. United States*, 423 U.S. 61, 62-63 (1975); *Broce*, 488 U.S. at 575-76 (when a double jeopardy claim is *not* apparent from the face of the indictment, a guilty plea bars even a double jeopardy claim). But a statute of limitations claim is not one that survives a guilty plea.

When a defendant pleads guilty, he has waived any potential statute of limitations defense. *United States v. Sgarlet*, 705 F. Supp. 2d 347, 355 (3d Cir. 2010) (citing *United States v. Karlin*, 785 F.2d 90, 91-93 (3d Cir. 1986). As previously noted, Johnson has the burden to prove that the statute of limitations had run for Count 1 of the Indictment[2] and that he would not have pleaded guilty.

Further, where the government dismisses more serious counts in return for a guilty plea, a defendant also bears the burden to show that the dismissed charges are invalid as well. *Bousley v. United States*, 523 U.S. 614, 624 (1998). As shown above, the dismissed charges at Counts 2-38 are more serious because each carried a much longer maximum penalty of 20 years. Since Johnson has not alleged any basis for concluding that these dismissed charges are invalid, he has failed to meet his burden and this allegation must be denied.

## VI.     JOHNSON HAS ALSO (DOUBLY) DEFAULTED ALL OF HIS CLAIMS

In the current § 2255 motion, Johnson must clear a significantly higher hurdle than even the plain error threshold that exists on direct appeal. *See United States v. Frady*, 456 U.S. 152, 166 (1982). "Section 2255 petitions are not substitutes for direct appeals and serve only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred." *United States v. Cepero*, 224 F.3d 256, 267 (3d Cir.

---

[2] Johnson inaccurately cites the 5-year statute of limitations in 18 U.S.C. § 3282, Doc. No. 63 at 12, instead of the appropriate 6-year statute of limitations for so-called "*Klein*" conspiracies located in 26 U.S.C. § 6531(1). Ongoing crimes such as conspiracy do not require that all actions take place during the statute of limitations. Instead, only a single overt act by any co-conspirator must occur within that time frame. *Grunewald v. United States*, 353 U.S. 391, 396 (1957). Additionally, Mutual Legal Assistance Treaty (MLAT) requests to Japan and the British Virgin Islands were made during the course of this investigation and 18 U.S.C.§ 3292 permits a Court to suspend the statute of limitations during the pendency of an MLAT request. A federal judge granted such an Order in this matter, suspending the statute of limitations. Misc. No. 20-mc-235, Doc. No. 1-3.

2000) (citing *Reed v. Farley*, 512 U.S. 339, 348 (1994)). A petitioner "procedurally defaults" every claim that he does not raise previously – and here, Johnson did not previously raise any claims. When, as here, a defendant fails to raise his issues in the district court and on direct appeal, he has *doubly* defaulted his claim. *Frady*, 456 U.S. at 168 (explaining the notion of "double procedural default").

This Court can only exempt Johnson from each procedural default bar if he has proven that either: (1) there is a valid "cause" for the default, as well as "actual prejudice" resulting from each of his defaults; or (2) he is "actually innocent" of the crimes for which he was convicted. *Bousley*, 523 U.S. at 622 ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'") (citations omitted); *see also Withrow v. Williams*, 507 U.S. 680, 721 (1993) (explaining that generally if a claim has not been raised on direct review, "it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations[,]" such as "actual innocence [a 'fundamental miscarriage of justice'] or cause and prejudice[.]"); *Frady*, 456 U.S. at 167-68 (setting forth the cause and prejudice standard); *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995); *Reed*, 512 U.S. at 354; *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977); and *United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993) (holding that the cause and prejudice standard of *Frady* "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed").

### A.  <u>JOHNSON HAS NOT PROVEN "CAUSE"</u>

To establish "cause" sufficient to overcome each procedural default, a defendant must prove that "'some objective factor external to the defense impeded counsel's efforts' to raise the

10

claim." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (citations omitted). "Examples of external impediments which have been found to constitute cause in the procedural default context include … ineffective assistance of counsel." *Wise v. Fulcomer*, 958 F.2d 30, 34 n.9 (3d Cir. 1992) (internal quotation marks omitted).

While ineffective assistance of counsel can constitute "cause" for a procedural default, "the attorney's ineffectiveness must rise to the level of a Sixth Amendment violation." *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 753-54 ("Attorney ignorance or inadvertence is not cause because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error.") (internal citations omitted)). Because Johnson fails to prove a Sixth Amendment violation, he has also failed to prove cause, and the Court need not address the issue of prejudice. *See Murray*, 477 U.S. at 533.

### B. **JOHNSON HAS NOT PROVEN PREJUDICE**

Even if Johnson had proven cause excusing his double procedural default, he must still prove actual prejudice resulting from the errors of which he complains. As noted, this standard requires a petitioner to "clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166.

Regarding actual prejudice, the petitioner has "the burden of showing, not merely that the errors … created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, [resulting in an] error of constitutional dimension," *Frady*, 456 U.S. at 170; *see also id.* at 169 (noting that "actual prejudice" means that the error worked a disadvantage to the petitioner so severe that it rises to the level of a due process violation). Thus, for guilty pleas,

11

prejudice requires proof that Johnson would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Sentencing guideline errors are not cognizable on collateral attack and only sentences beyond the statutory maximum may be challenged in such an attack. *Folk*, 954 F.3d at 604. Johnson's sentence was not above the statutory maximum, and he has also failed to prove that he would not have pleaded guilty.

### C. JOHNSON HAS NOT ALLEGED OR PROVEN ACTUAL INNOCENCE

The "miscarriage of justice" exception to a defendant's procedural default applies only in extraordinary cases, and, therefore, requires a defendant to prove his actual innocence – meaning his factual innocence, not merely that there was some legal insufficiency. *Bousley*, 523 U.S. at 623. As such, a claim of "actual innocence" cannot be based on a legal, procedural defect, and instead requires a defendant to establish that "in light of all the evidence . . . it is more likely than not that no reasonable juror would have convicted him." *Id*. at 623 (emphasis added) (explaining a petitioner's defaulted claim may only be reviewed if he proves that a "constitutional error . . . 'has probably resulted in the conviction of one who is actually innocent.'") (quoting *Murray*, 477 U.S. at 496; *Schlup*, 513 U.S. at 316 (holding that a procedural default may be excused only if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial[.]"; *United States v. Davies*, 394 F.3d 182, 191 (3d Cir. 2005); *Hubbard v. Pinchak*, 378 F.3d 333, 339-41 (3d Cir. 2004). If a petitioner can demonstrate actual innocence, only then may his procedural default be excused.

"New reliable evidence is almost always required to establish actual innocence." *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002). The "new reliable evidence" often comes by way of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" not presented at trial, *Schlup*, 513 U.S. at 324; *Hubbard*, 378 F.3d at 339-41, that would make it

12

more likely than not that "no reasonable juror would find [petitioner] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006); *see also Schlup*, 513 U.S. at 316 (even a "concededly meritorious constitutional violation" is not sufficient to establish a miscarriage of justice to excuse procedural default absent evidence of actual innocence). The petitioner must show that no reasonable juror would have found him guilty beyond a reasonable doubt, and not merely that a reasonable doubt exists in light of the new evidence. *Schlup*, 513 U.S. at 329; *see also House v. Bell*, 547 U.S. 518, 536-37 (2006); *Davies*, 394 F.3d at 191; *United States v. Garth*, 188 F.3d 99, 107 (3d Cir. 1999) ("'Simply stated, 'actual' innocence ... means that the person did not commit the crime.'") (quoting *Johnson v. Hargett*, 978 F.2d 855, 860 (5th Cir. 1992)). Johnson offers no evidence, much less new reliable evidence, and his claims are therefore insufficient to warrant relief.

## VII. NONE OF JOHNSON'S CLAIMS MERIT RELIEF

After reviewing the legal framework set forth above, the government will address each of Johnson's claims and set forth the primary reasons why they do not justify relief.

<u>Ground One (Doc. No. 63 at 4) (mitigating role/no conspiracy)</u>: Johnson has failed to prove that a mitigating role adjustment under U.S.S.G. § 3B1.2 applied or that there was no conspiracy. The plea letter specifically precluded both parties from seeking any additional offense characteristics or adjustments. PSR ¶ 11. Johnson's guilty plea admitted all elements of the offenses of conviction, *McCarthy v. United States*, 394 U.S. 459, 466 (1969), and the existence of a conspiracy is shown even by facts included in the PSR which include: Johnson offering tax advice to other coconspirators, PSR ¶ 21; his discussions regarding his knowledge of PeopleSoft HR software and its vulnerabilities, PSR ¶ 23; his acquisition of an application for a tax preparer ID number to be used by the purchasers of his stolen PII to create fictitious tax returns, PSR ¶ 26;

and, most tellingly, his confession to another individual that he "was conspiring," PSR ¶ 24. Johnson's pecuniary interest in the success of the conspiracy is clearly revealed by the tax advice he provided and his goal of being "rich by the end of the year." PSR ¶ 24.

Ground Two (Doc. No. 63 at 5-6) (counsel's unfamiliarity with sentencing guidelines) : Johnson has failed to prove that his attorney was not familiar with the sentencing guidelines. To the contrary, an ECF search indicates that she has been counsel on 42 separate cases in the WDPA alone. Even if his allegation regarding the guideline section utilized was accurate – and the government notes that neither 2B2.1 nor 1B1.2 were utilized in determining the sentencing guideline range per PSR ¶¶ 36-37 – Johnson has failed to show prejudice (for example, that some prior agreement resulted in a higher guideline range), *especially* because U.S.S.G. § 2B2.1 was not utilized. Because the PSR discussed the potential denial of federal benefits, PSR ¶¶ 105, 106, it was hardly ineffective assistance of counsel for Attorney Henry-Taylor to advocate that no federal benefits be denied, and, in any event, no such denial was imposed and no prejudice to Johnson exists.

Ground Three (Doc. No. 63 at 8-9) (counsel's ineffective sentencing performance): Johnson fails to allege, let alone prove, any prejudice from counsel's request for a brief 3-week extension of the time for administrative resolution of the draft PSR, or any of the other allegations in Ground Three. The previous interviews of Johnson's co-workers permit the government to confidently submit that he was fired for reasons that included him improperly accessing computer hard drives that he was only supposed to be wiping. The government notes that although Johnson decided to exercise his right of allocution, he apparently failed to dispute the government's allegation. In fact, had he done so, Johnson likely would have faced a 2-level enhancement of his guidelines for obstruction. U.S.S.G. § 3C1.1 and application notes 4(F) and (H).

Ground Four (Doc. No. 63 at 10-11) (sentencing Due Process violations): Johnson fails to allege and prove both the claims that he makes and any prejudice. It appears reasonable to believe that Johnson's actions caused both widespread computer system shutdowns and hospital employee absenteeism that could endanger patients' lives. It also appears reasonable to believe that Johnson intended to intimidate his victims. This fulfills the legal definition of "domestic terrorism" contained in 18 U.S.C. § 2331(5).

Ground Five (Doc. No. 63 at 12) (fail to pursue statute of limitations and conspiracy issues): As indicated above, Johnson waived his right to challenge the statute of limitations by pleading guilty. Equally importantly, Johnson has not proven that the statute of limitations was violated. He cannot show prejudice because a plea to any one of the other dismissed charges would have resulted in a longer potential maximum sentence. The hallmarks of a conspiracy are a unity of purpose and an intent to achieve a common goal. Model Third Circuit Jury Instructions 6.18.371A and 6.18.371E. Johnson's plea is an admission to all of the elements of an offense, *McCarthy*, 394 U.S. at 466, and the discussion of Ground One above shows that there was a factual basis for the conspiracy plea. Johnson's unsupported allegations and failure to prove prejudice clearly do not meet his burden.

Ground Six (Doc. No. 63 at 12) (counsel's failure to consult regarding appeal): An attorney does not have an affirmative duty to consult with a client about an appeal unless: 1) there are obvious grounds for appeal; or 2) a defendant reasonably demonstrates an interest in an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Johnson waived essentially any right to file a direct appeal and it is simply not credible for him to allege that he would risk losing his critical 3-level reduction for acceptance of responsibility and re-prosecution for all the dismissed counts, because of a *3-month* upward deviation from the guidelines. Johnson does not allege that he ever

15

requested an appeal (despite his admission in Ground Seven to having a post-sentencing conversation with counsel) and counsel has confirmed that Johnson has never made such a request. No prejudice is known because any appeal filed by Johnson would have been dismissed in accordance with his appellate waiver.

Ground Seven: Restitution claims are not cognizable in collateral attacks and Johnson has failed to present any proof of his claim. Neither has he alleged (let alone proven) that a hearing would have resulted in a better outcome. In the unlikely event that a hearing is scheduled, the government expects that Judge Henry-Taylor would testify that: she advised Johnson of the potential stipulation; she informed him that she remained willing to hold a restitution hearing if Johnson wanted one; she would never file such a stipulation without her client's consent; and that Johnson agreed with the stipulation.

Ground Eight: Counsel did not move to withdraw until one month after the stipulation was filed on the docket. The Indictment Memorandum indicated that restitution was at issue; the plea letter indicated that restitution was at issue; Johnson agrees that he discussed restitution with his attorney; and the matter of restitution was left open at sentencing. Thus, it defies logic for Johnson to allege that he was not on notice. Restitution claims are not cognizable on collateral review and Johnson has failed to prove prejudice.

## VIII.     CONCLUSION

For all the foregoing reasons, this Court should deny Johnson's Motion Under 28 U.S.C. § 2255.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

*/s/ Ross E. Lenhardt*
ROSS E. LENHARDT
Assistant U.S. Attorney
PA ID No. 53627

**CERTIFICATE OF SERVICE**

  I hereby certify a copy of this filing has been mailed to the *pro se* defendant at his current institution of record within the BOP.

  Justin Johnson
  Reg. No. 58290-039
  FCI Loretto
  P.O. Box 1000
  Cresson, PA 16630

            */s/ Ross E. Lenhardt*
            ROSS E. LENHARDT
            Assistant U.S. Attorney